UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TERESA L. HARRIS,<br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>    Defendant. | Civil Action No. 3:11-1018<br>Judge Nixon/Brown |

To:   The Honorable John T. Nixon

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g) and 1383(c)(3) to obtain judicial review of the Commissioner of Social Security denying plaintiff Teresa L. Harris' applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) under Titles II and XVI of the Social Security Act (Act). Currently pending before the Magistrate Judge is Plaintiff's Motion for Judgment on the Record and Defendant's response. The Magistrate Judge has also reviewed the administrative record (hereinafter "Tr."). (Docket Entry 10). For the reasons set forth below, the Magistrate Judge hereby **RECOMMENDS** Plaintiff's motion be **DENIED** and this action be **DISMISSED**.

## I.  INTRODUCTION

Plaintiff first filed for SSI and DIB on April 16, 2009, with an alleged onset date of May 1, 2007. (Tr. 10). Plaintiff's claims were denied initially on October 15, 2009, and upon reconsideration on November 24, 2009. On December 21 of that year, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). This hearing took place on February 8,

1

2011. At the hearing, Plaintiff amended the onset date to July 1, 2009. On April 1, 2011, the ALJ ruled that Plaintiff was not disabled within the meaning of the Act from the initial alleged onset date through the date of the decision.

In the decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.

2. The claimant has not engaged in substantial gainful activity since July 1, 2009, the amended alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: history of neck and ankle surgeries with degenerative arthritis, repaired rotator cuff tear, labile hypertension, depression, anxiety and history of alcohol dependence and pancreatitis (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 415.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) in that she can lift up to 20 pounds occasionally and ten pounds frequently; can stand or walk up to four hours in an eight hour workday with normal breaks, one hour continuously; can sit for up to or about six hours in an eight hour workday with normal breaks; can frequently push/pull with the left lower and upper extremities (unlimited on right); can occasionally climb stairs/ramps, balance, stoop, kneel, crouch, crawl or squat; should not climb ladders/ropes/scaffolds; can frequently handle and finger; and can have no more than occasional exposure to extreme heat, humidity or workplace hazards like unprotected heights and moving machinery. Claimant can understand and carry out one to three step directions; can maintain concentration and persistence for one to three step tasks for up to two hour periods; can have occasional contact with the general public; can relate to co-workers and interact with supervisors; and can adapt to infrequent workplace changes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 18, 1961 and was 46 years old, which is defined

      as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.964).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

On August 26, 2011, the Appeals Council denied Plaintiff's request for review. (Tr. 1). Plaintiff then filed this action on October 25, 2011. (Docket Entry 1).

## II. REVIEW OF THE RECORD

Plaintiff was born on March 18, 1961 and has a high school education as well as one year of medical training. (Tr. 29-31). Prior to the alleged onset, Plaintiff had worked as a cashier, assembler, hand packager, waitress, dispatcher, secretary and sandwich maker. (Tr. 47).

    A.    <u>Medical Record</u>

In May of 2000, Dr. Vaughan A. Allen performed a laminectomy and forminotomy on Plaintiff's cervical spine. (Tr. 201). This surgery addressed Plaintiff's complaints of "significant radicular arm pain" and two level disease. Notes from the surgery indicate that narrowing in the C5-C6 and C6-C7 junctions of Plaintiff's spine were consistent with degenerative disc disease. There is no indication in the record of a follow-up appointment after the surgery.

3

In October of 2001, Plaintiff suffered a left ankle fracture. (Tr. 199). Dr. Robert Collins performed an open reduction internal fixation procedure and applied a short leg cast. In a follow-up at Skyline Medical Center, Plaintiff's ankle showed incomplete healing, but no evidence of infection in the bone. (Tr. 210).

In October of 2007, Plaintiff was hospitalized for pancreatitis. (Tr. 223). Plaintiff stated that she had been drinking 8-12 cans of beer per day, but had stopped due to the vomiting and nausea. (Tr. 221). Plaintiff had no musculoskeletal complaints. (Tr. 257). On November 4, Plaintiff underwent surgery to remove her gallbladder. (Tr. 225). She was discharged on November 6, 2007. (Tr. 220).

On November 21, 2008, Plaintiff underwent treatment for an arm fracture. (Tr. 289). On December 7, Plaintiff again sought treatment, this time complaining of pain in her shoulder after a fall. (Tr. 305). Dr. Frank Lacina noted that Plaintiff consumed about 12 cans of beer per day, and used some narcotics. X-Rays revealed a mildly distracted avulsion-type fracture, measuring 3.5 cm in length. (Tr. 308). Dr. Lacina also noted chronic degenerative changes of the distal clavicle.

On July 1, 2009, Dr. Bruce Davis examined Plaintiff for disability determination. (Tr. 313). Plaintiff complained that a 2000 surgery left her with continuing neck pain and bilateral shoulder and hand pain, with numbness and tingling. She also reported continuing pain from her shoulder injury and ankle injury, as well as lower back pain. Dr. Davis opined that Plaintiff could occasionally lift 10-20 pounds, frequently ten pounds; could stand or walk 4/8 hours in a workday, with less than one hour uninterrupted; could sit 8/8 hours in a workday; was limited in overhead reaching, squatting, and forcefully gripping; and should limit exposure to heat,

4

humidity, climbing and heights. (Tr. 315).

On July 29, 2009, Dr. Robert Doran performed a psychological disability evaluation on Plaintiff. (Tr. 317). Dr. Doran noted that Plaintiff's breath smelled of alcohol, and that Plaintiff had two to four beers daily. (Tr. 318). Plaintiff claimed that she had lost her insurance and had not seen a doctor in years. The doctor diagnosed Plaintiff with Major Depressive Disorder, Recurrent, Moderate. Dr. Doran additionally diagnosed her with Alcohol Dependence, Cannabis Abuse, and Anxiety Disorder.

On August 21, 2009, Dr. George L. Cross III evaluated Plaintiff's Residual Functional Capacity (RFC), using the record as basis. (Tr. 330). The doctor opined that Plaintiff's claims of constant pain were "at best partially credible." (Tr. 327). The doctor also stated that while Dr. Davis' restrictions on lifting were reasonably supported, the doctor's restrictions on walking and standing were not supported, and the other limitations were overly vague. (Tr. 328). Dr. Cross opined that Plaintiff could lift 20 pounds occasionally, frequently ten; could stand and/or walk about 6 out of 8 hours in a workday; was limited in left upper and left lower extremities in pushing or pulling to frequently; could frequently stoop and balance; could occasionally crouch, crawl, kneel, and climb ramps or stairs; could never climb ladders, ropes or scaffolds; was limited to occasionally reaching overhead; and should avoid concentrated exposure to hazards. (Tr. 323-26).

In September of 2009, Dr. Mason D. Currey performed a psychiatric review on Plaintiff. (Tr. 331). Dr. Currey opined that Plaintiff had mild restrictions on daily living activities, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. (Tr. 341). In November of that year, Dr. Karen Lawrence

5

reviewed the evidence on record and affirmed Dr. Currey's evaluation. (Tr. 350).

On July 1, 2010, Plaintiff visited Dr. J. Rick Manning's office due to high blood pressure. (Tr. 351). Plaintiff complained of numerous symptoms of the condition, which had existed for two weeks. The report indicated that someone named "CT" performed nearly all of the evaluation. The records do not show any treatment Dr. Manning recommended. While most of the report is marked as "done by ct," the impression is marked as "done by jm." The impression states that Plaintiff had essential hypertension, malignant and fatigue/malaise. (Tr. 352).

Plaintiff returned to Dr. Manning for an RFC evaluation on November 22nd, 2010. (Tr. 353). Dr. Manning opined that Plaintiff could occasionally lift up to ten pounds, never carry; could walk up to 25-30 minutes in an 8-hour workday; could sit or stand up to one hour in an 8-hour workday; could occasionally reach, handle, and finger; never pull or feel; could occasionally operate foot controls with her right foot, never with her left foot; occasionally balance and climb stairs and ramps; could never stoop, kneel, crouch, crawl or climb ladders or scaffolds; could occasionally tolerate exposure moving mechanical machinery, humidity and wetness, extreme cold, extreme heat, and vibrations; should never be exposed to unprotected heights; could occasionally operate a motor vehicle; and could be exposed to moderate levels of noise. (Tr. 353-57). Dr. Manning noted impairments caused by a "possible stroke caused by hypertension."

    B.    <u>Hearing Testimony</u>

At the administrative hearing, Plaintiff testified that she experiences chronic pain in her neck, shoulders and into her arms. (Tr. 36). Plaintiff also reported occasional numbness in the elbows and hands, mostly on the right. (Tr. 37). Plaintiff also reported constant pain in her

6

ankle, sometimes creating a limp depending on the weather. (Tr. 38). Plaintiff is able to cook, go out shopping and do laundry. (Tr. 42, 43). Plaintiff stated that she drives very rarely, primarily because she does not have a vehicle. (Tr. 31). Plaintiff stated that she saw Dr. Manning on one occasion. (Tr. 44).

At the hearing, Vocational Expert (VE) Gordon Doss testified on jobs that could be available to Plaintiff. (Tr. 46). The ALJ posed a hypothetical scenario where Plaintiff could: occasionally lift 20 pounds, frequently ten; stand and/or walk for up to or about four hours in an 8-hour workday, one hour continuously; sit for up to or about six hours in an 8-hour workday with normal breaks; frequently push or pull with the left extremities (unlimited on the right); occasionally balance, stoop, kneel, crouch, crawl, squat, and climb stairs or ramps; avoid climbing ladders, ropes and scaffolds; frequently handle and finger; and only have occasional exposure to extreme heat or humidity, or workplace hazards such as unprotected heights or moving machinery. (Tr. 48-49). Given these limitations, the VE testified that Plaintiff could still work as cashier, dispatcher and secretary. (Tr. 49).

The ALJ added mental limitations to the physical limitations in another hypothetical. In this hypothetical, Plaintiff could: understand, remember, and carry out one-to-three-step directions; maintain concentration and persistence for one-to-three-step tasks for at least two-hour periods; have occasional interactions with the general public; relate to coworkers and interact with supervisors; and adapt to infrequent changes in workplace. (Tr. 50). Given this hypothetical, the VE testified that the secretary and dispatcher jobs would "still be available." (Tr. 51). The VE also mentioned that the jobs of courier messenger, surveillance systems monitor, and parking lot attendant would be available. (Tr. 51). The VE further testified that if

7

Dr. Manning's assessment or Plaintiff's testimony were considered fully credible, Plaintiff could not perform any jobs. (Tr. 52).

Plaintiff's attorney then questioned the VE regarding the second hypothetical. (Tr. 53). When asked if Plaintiff could perform highly skilled work as a secretary or skilled work as a dispatcher, the VE testified that Plaintiff could perform skilled work with past work, education or skills the person already has. (Tr. 52). The VE testified that if 15 years of work had not passed, the person would be able to retain those skills in a useful way.

### III. PLAINTIFF'S STATEMENT OF ERRORS

Plaintiff alleges two errors for review. First, that the ALJ erred by not giving proper weight to the opinions of Drs. Manning and Davis. Second, that the testimony of the vocational expert is not reliable.

    A.    <u>Standard of Review</u>

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *See Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner*, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could support a different conclusion, the decision

of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). However, failing to consider the record as a whole undermines the Commissioner's conclusion. *See Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985).

  B. <u>Proceedings at the Administrative Level</u>

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

1. If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

2. If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

3. If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

4. If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (*e.g.*, what the claimant can still do despite his or her limitations); by showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

5. Once the claimant establishes a *prima facie* case of disability, it becomes the Commissioner's burden to establish the claimant's ability to work by providing the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional

---

[1] The Listing of Impairments is found at 20 C.F.R., pt. 404, Subpt. P, App. 1.

capacity.

*Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Even once analysis has reached step five, it remains the burden of the claimant to prove the extent of the disability. *Her,* 203 F.3d at 391. In determining residual functional capacity for purposes of the analysis required at steps four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and non-severe. *See* 42 U.S.C. § 423(d)(2)(B).

      C.      <u>The ALJ Properly Evaluated the Opinions of Drs. Manning and Davis</u>

Plaintiff argues that only Drs. Manning and Davis actually examined Plaintiff, so their opinions should control. (Docket Entry 12-1). Plaintiff further argues that Dr. Manning filled in the blanks of Dr. Davis' assessment, and that the ALJ never addressed the fine motor limits and extremity limits expressed by both doctors. Defendant argues that the ALJ did afford Dr. Davis' opinion significant weight, and found it irreconcilable with Dr. Manning's opinion. Defendant also argues that the ALJ properly found Dr. Manning's assessment unsupported and inconsistent with the objective evidence. Plaintiffs acknowledge that Dr. Manning was not a treating physician. (Docket Entry 12-1, p. 11).

In evaluating medical opinions, the Commissioner must weigh the following factors: (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors. 20 C.F.R. § 404.1527(c). If the treating doctor's opinion is well supported and consistent with the other evidence on the record, the Commissioner awards that opinion controlling weight. *Id.* Treating physicians receive deference because they can provide a "detailed, longitudinal picture" of the claimant's medical impairments. 20 C.F.R. §

10

404.1527(c)(2). The ALJ must articulate a reason when rejecting the opinion of a treating physician. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). Aside from the treating physician rule, reviewing courts may not resolve conflicts of evidence or questions of credibility. *Floyd v. Finch*, 441 F.2d 73, 75 (6th Cir. 1971).

Here, the ALJ's treatment of both doctors' opinions was proper. In discounting Dr. Manning's opinion, the ALJ discussed the inconsistency of Dr. Manning's restrictions with both the record and his own previous notes. (Tr. 16). Contrary to Plaintiff's assertion, the ALJ awarded Dr. Davis's opinion significant weight, and discussed the limits on the extremities Dr. Davis described. (Tr. 17). The ALJ adopted many of Dr. Davis' restrictions in the final RFC assessment.[2]

Plaintiff's assertion that Dr. Manning's opinions should "fill in the gaps" of Dr. Davis' assessment is without merit. Plaintiff cites no authority that the ALJ must combine the opinions of two doctors when one has "gaps." Filling in the gaps of one report with another would create a fictional doctor's opinion. The ALJ found Dr. Manning's report not credible, and laid out many reasons for the finding. There is no requirement that the ALJ take details from a report given little weight if those details are unaddressed by the more credible source. Even if Dr. Manning were a treating physician, the ALJ adequately discussed the reasons for discounting the assessment.

Plaintiff's assertion that the weight of the reliable evidence supports Dr. Manning's conclusion is beyond the scope of review. The ALJ merely needs substantial evidence in support

---

[2]Plaintiff asserts that the ALJ should have given Dr. Davis' assessment both more weight and less weight simultaneously. (Docket Entries 12-1, 18).

11

of a finding, and reviewing courts may not resolve conflicts in evidence. Dr. Davis' report supports the ALJ's RFC finding, and the ALJ laid out many reasons to discount Dr. Manning's finding. Thus, substantial evidence supports the ALJ's RFC finding.

> D. The ALJ Properly Credited the VE's Testimony

Plaintiff argues that the VE's testimony was not reliable because the VE made assumptions outside of the ALJ's hypothetical. Plaintiff asserts that because the ALJ never addressed when Plaintiff left her previous jobs, the VE made assumptions when stating that Plaintiff could still perform work as secretary or dispatcher. Plaintiff further disputes whether Plaintiff could perform the unskilled jobs mentioned by the VE given the hypothetical RFC. Defendants argue that the assumption only addressed jobs the ALJ found Plaintiff could not perform, and that the ALJ properly relied on the VE's testimony for the other three jobs.

"A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments." *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001). When the VE's testimony conflicts with the Dictionary of Occupational Titles (DOT), and no attorney brings this conflict to the attention of the ALJ, the ALJ need not explain how the conflict is resolved. *Martin v. Comm'r of Soc. Sec.*, 170 Fed. Appx. 369, 374 (6th Cir. 2006). "Nothing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct." *Id.*

In the DOT, occupations with a Specific Vocational Preparation (SVP) rating of 2 require more than a short demonstration, but less than a month to learn. DOT, Appx. C, § II

12

(www.oalj.dol.gov/libdot.htm, accessed August 1, 2012). The jobs of courier, surveillance system monitor, and parking lot attendant all have SVP ratings of 2. DOT codes 230.663-010, 379.367-010, 915.473-010 (respectively numbered). The DOT description of the courier job mentions travel by foot, motorcycle, automobile or public transportation. The description of the parking lot attendant job mentions interacting with the public to exchange parking slips and money. Other than the SVP rating, the three job descriptions do not detail specific mental requirements.

Substantial evidence supports the ALJ's credibility decision regarding the VE's testimony. First, Plaintiff's argument that the VE is not credible due to the alleged assumption is outside the scope of review. Second, the argument that Plaintiff could not perform the jobs described by the VE is similarly outside the scope of review. Third, the VE's testimony does not conflict with the DOT. Lastly, even if the testimony did conflict with the DOT, the substantial evidence would still back the ALJ's finding regarding available jobs.

Plaintiff's allegation that the VE's testimony was "based upon preconceived notions about how the case should be decided"[3] is outside of the scope of review and not supported by significant evidence. First, the VE merely said that the jobs of secretary and dispatcher would "still be available" given the hypothetical limitations. This statement requires no assumptions and says nothing as to whether Plaintiff could actually perform the jobs. Given the VE's testimony, saying that the jobs would be unavailable would actually require the assumption that Plaintiff left the job many years earlier. Second, the ALJ explicitly finds that Plaintiff was unable to perform these jobs, and the question of whether she could perform the previous jobs is

---

[3] Docket Entry 12-1, p. 12

irrelevant to the holding.  If the VE did make an assumption in the answer, the assumption was a harmless error.  Third, even if the ALJ had found Plaintiff able to perform those jobs and the VE had made an assumption, reviewing courts do not decide issues of credibility, as mentioned in *Floyd*.

Plaintiff's arguments disputing that someone with the hypothetical RFC could perform the remaining jobs are similarly beyond the scope of review.  The VE testified that these jobs would be available, and there was no dispute during the hearing.  Plaintiff does not assert that the testimony conflicted with the DOT, so the ALJ's finding on whether or not Plaintiff could actually perform these jobs was a credibility assessment of the VE.  Such credibility assessments are beyond the scope of review.

If the VE's testimony had conflicted with the DOT, there would have been a better argument, but that is not the case.  Plaintiff seems to argue at one point that since the courier job requires transportation by foot, car, motorcycle or public transportation, this violates the DOT because there is no evidence that Plaintiff could use a car or a motorcycle.  However, this ignores the public transportation option.  In addition, most RFC assessments did not mention a limitation on driving, and Plaintiff's testimony indicated that she is capable of driving a vehicle.  Plaintiff similarly argues a person with the hypothetical RFC could not be a surveillance systems monitor due to the limit on concentration.  However, there is nothing in the DOT that suggests the surveillance job would not be possible when only able to concentrate in two hour blocks.  The VE's testimony, properly credited, provided substantial evidence for the ALJ's decision that Plaintiff could perform the jobs.

Even if the VE's testimony directly conflicted with the DOT, this still would not justify a

14

remand. Plaintiff failed to point out any conflicts with the DOT at the hearing. Thus, as discussed in *Martin*, the ALJ was not required to address any conflicts. Substantial evidence backs the ALJ's finding regarding available jobs regardless of how one interprets the VE's testimony.

## IV.  RECOMMENDATION

In light of the foregoing, the Magistrate Judge **RECOMMENDS** that Plaintiff's Motion be **DENIED** and the action be **DISMISSED**.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objection to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

ENTERED this 3rd day of August, 2012.

_____
JOE B. BROWN
United States Magistrate Judge